IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cv-513

| | |
|---|---|
| TAISHA GILLIAM-SPRINGER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **COMPLAINT** |
| ) | **JURY TRIAL DEMANDED** |
| WSP USA, INC., ) | |
| ) | |
| Defendant. ) | |

COMES NOW Plaintiff Taisha Gilliam-Springer ("Ms. Gilliam-Springer"), complaining of Defendant WSP USA, Inc. ("Defendant"), alleges and says the following:

## INTRODUCTION

1. Defendant retaliated against Ms. Gilliam-Springer for her repeated complaints of racial discrimination by one of her supervisors, first by issuing performance improvement plans and then, ultimately, firing her in November 2023.

2. Ms. Gilliam-Springer brings the instant claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").

## JURISDICTION

3. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

4. A substantial part of the unlawful acts alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

5. Venue is therefore proper pursuant to 28 U.S.C. § 1391.

6. Costs and attorney's fees may be awarded pursuant to Title VII, 42 U.S.C. § 2000e-5(k); and Fed. R. Civ. P. 54.

1

7. The Court should assume supplemental jurisdiction of Ms. Gilliam-Springer's state law claims because these claims are based on the same operative facts as the discrimination claims over which this Court has jurisdiction, and judicial economy, convenience, and fairness to the parties' demand that the Court assume and exercise jurisdiction over all claims alleged herein.

## PARTIES

8. Ms. Gilliam-Springer is an African American citizen of the United States and a resident of Raleigh, North Carolina.

9. Upon information and belief, Defendant is a corporation duly organized and existing under the laws of the State of New York.

10. At all times relevant to this Complaint, Ms. Gilliam-Springer was an "employee" of Defendant as that term is defined by Title VII.

11. At all times relevant to this Complaint, Defendant was an "employer" of Ms. Gilliam-Springer as the term is defined in Title VII.

## ADMINISTRATIVE HISTORY

12. On or about November 8, 2023, Ms. Gilliam-Springer filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the November 8th EEOC Charge is attached hereto as Exhibit A.

13. The EEOC issued a "Dismissal and Notice of Rights" on June 25, 2024. A copy of the June 25, 2024 Dismissal and Notice of Rights letter is attached hereto as Exhibit B.

14. This Complaint is being timely filed within 90 days from the date Ms. Gilliam-Springer received the Dismissal and Notice of Rights from the EEOC.

15. Ms. Gilliam-Springer has satisfied all private, administrative, and judicial prerequisites to the institution of this action.

# FACTS

16. Defendant hired Ms. Gilliam-Springer as a Contract Administrator in July 2016.

17. Ms. Gilliam-Springer performed her role exceptionally throughout her employment with Defendant.

18. During all times relevant to this Complaint, Ms. Gilliam-Springer was supervised throughout her employment by Kim Pierce, Contracts Manager.

19. During all times relevant to this Complaint, Ms. Pierce gave Ms. Gilliam-Springer positive written performance reviews and frequent verbal praise.

20. During all times relevant to this Complaint, Erica Groff-Balani, Defendant's Vice President, Contracts, was Ms. Pierce's direct supervisor.

21. Ms. Groff-Balani oversaw and enabled a system of racial discrimination in her department that resulted in Ms. Gilliam-Springer being regularly passed over for advancement in favor of less qualified candidates.

22. In 2020, Ms. Gilliam-Springer suggested to Defendant that the company reorganize her department and create new geographic divisions.

23. As part of this recommendation, Ms. Gilliam-Springer made clear to Defendant's leadership that she wanted to be considered for a managerial role in the new structure.

24. Defendant approved Ms. Gilliam-Springer's suggestion and began filling leadership roles for each of these divisions.

25. Despite Ms. Gilliam-Springer's qualifications and years of experience, she was not promoted into these new leadership positions.

26. Instead, Defendant hired three white individuals to serve as regional heads: Vicki Long, Ashley Taylor, and Kim Pierce.

27. Ms. Gilliam-Springer had more experience than each of the three individuals hired to fill the regional lead positions.

28. In 2021, Defendant instituted a new system called "Horizon" for its employees.

29. Upon its institution, Ms. Gilliam-Springer informed Defendant's leadership that she wanted to be considered for a trainer position on the new system.

30. Becoming a trainer for the Horizon system would have been a promotion for Ms. Gilliam-Springer.

31. Defendant once again denied Ms. Gilliam-Springer's application for a promotion.

32. Upon information and belief, Defendant placed all white individuals with less experience than Ms. Gilliam-Springer into the role of trainer for the Horizon program.

33. Having been frustrated by the continued artificial ceiling placed on her by Defendant's discrimination, Ms. Gilliam-Springer contacted her Human Resources Representative, Katie Braun, on June 14, 2022.

34. During this conversation, Ms. Gilliam-Springer reported to Ms. Braun that Ms. Groff-Balani was engaging in discriminatory conduct by rejecting her requests for promotion.

35. Defendant took no steps to remedy Ms. Groff-Balani's conduct.

36. Having received no resolution from Defendant regarding her complaints, Ms. Gilliam-Springer wrote to Defendant on December 4, 2022, requesting a transfer to a different section away from Ms. Groff-Balani's leadership.

37. Defendant rejected this request for transfer.

38. Having learned about Ms. Gilliam-Springer's complaints about her, Ms. Groff-Balani escalated her campaign of retaliation against Ms. Gilliam-Springer.

39. Ms. Groff-Balani attempted to document invented deficiencies in Ms. Gilliam-Springer's job performance.

40. On March 9, 2023, Ms. Groff-Balani drafted a "Performance Improvement Plan" for Ms. Gilliam-Springer's personnel file.

41. Defendant is not in possession of a signed version of the March 9th "Performance Improvement Plan" despite there being a signature block on the document.

42. Ms. Groff-Balani never gave the March 9th "Performance Improvement Plan" to Ms. Gilliam-Springer.

43. Ms. Groff-Balani created the March 9th "Performance Improvement Plan" solely to create a paper trail to justify her decision to ultimately terminate Ms. Gilliam-Springer's employment.

44. Similarly, Ms. Groff-Balani drafted a second "Performance Improvement Plan" on May 15, 2023.

45. Ms. Groff-Balani, in fact, ghostwrote the May 15th "Performance Improvement Plan" to be signed by Ms. Gilliam-Springer's direct supervisor, Kim Pierce.

46. Ms. Groff-Balani submitted the May 15th "Performance Improvement Plan" to Ms. Pierce for her approval.

47. Ms. Pierce rejected the May 15th "Performance Improvement Plan" because she believed that Ms. Gilliam-Springer's performance met Defendant's reasonable expectations.

48. Once again, Defendant is not in possession of a signed version of the May 15th "Performance Improvement Plan" despite there being a signature block on the document.

49. Ms. Groff-Balani never gave the May 15th "Performance Improvement Plan" to Ms. Gilliam-Springer.

50. Ms. Groff-Balani created the May 15th "Performance Improvement Plan" solely to create a paper trail to justify her decision to ultimately terminate Ms. Gilliam-Springer's employment.

51. The March 9th and May 15th "Performance Improvement Plans" contained verifiably false accusations regarding Ms. Gilliam-Springer's performance.

52. Ms. Groff-Balani terminated Ms. Gilliam-Springer's employment with Defendant on November 3, 2023.

53. The date on the unsigned May 15th "Performance Improvement Plan" that is in Ms. Gilliam-Springer's personnel file is January 18, 2024.

54. At no time during her employment with Defendant was Ms. Gilliam-Springer presented with any written documentation regarding her work performance or conduct.

55. Prior to the termination of Ms. Gilliam-Springer's employment, Defendant had been repeatedly put on notice of Ms. Groff-Balani's discriminatory conduct.

56. For example, on June 14, 2022, Defendant was made aware of a complaint by an African American woman saying that she felt she had been "intentionally targeted" by Ms. Groff-Balani. This complaint was repeated by the same employee on June 1, 2023 when she reported to Defendant that she was still being "targeted" by Ms. Groff-Balani and that she did "not feel safe."

57. Despite being on notice of Ms. Groff-Balani's ongoing discriminatory and retaliatory conduct, Defendant allowed her to supervise African American women and, ultimately, terminate their employment with the company.

### COUNT I – RETALIATION

58. Ms. Gilliam-Springer hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

59. Title VII prohibits retaliation against employees who oppose discrimination prohibited by the statute.

60. Ms. Gilliam-Springer engaged in protected activity within the meaning of Title VII by reporting the racist and discriminatory conduct of Ms. Groff-Balani.

61. At the time of her reports, Ms. Gilliam-Springer was meeting all her job expectations.

62. Ms. Gilliam-Springer was denied promotion and, ultimately, terminated from her position with Defendant in retaliation for his protected activity.

63. Defendant's decisionmakers were aware of Ms. Gilliam-Springer's protected activity at the time they fired her.

64. As a direct and proximate result of Defendant's retaliation, Ms. Gilliam-Springer suffered and continues to suffer economic losses, pain and suffering, and other nonpecuniary losses.

65. Defendant's actions were intentional, willful, and done in reckless disregard of Ms. Gilliam-Springer's rights as protected by Title VII.

66. Accordingly, Ms. Gilliam-Springer is entitled to recover punitive damages from Defendant.

67. Ms. Gilliam-Springer is entitled to recover her reasonable attorney's fees and costs.

## COUNT II – WRONGFUL DISCHARGE

68. Ms. Gilliam-Springer hereby realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

69. The termination of Ms. Gilliam-Springer's employment was done in violation of the public policy of the State of North Carolina, specifically the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, *et seq.*

70. Ms. Gilliam-Springer is entitled to recover from Defendant her compensatory damages as provided by North Carolina law, including, but not limited to, back pay, front pay, benefits of employment, inconvenience, loss of enjoyment of life, and humiliation.

71. Defendant's conduct as set forth herein was malicious and/or willful and wanton, thereby justifying an award of punitive damages.

72. Ms. Gilliam-Springer is entitled to recover her reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff hereby requests the following relief:

1. Plaintiff has and recovers from Defendant for all economic damages in an amount to be proved at trial;

2. Plaintiff has and recovers from Defendant for all non-economic damages in an amount to be proved at trial;

3. Plaintiff has and recovers from Defendant for punitive damages in an amount to be determined by the jury;

4. All costs, interest, and expenses, including reasonable attorney's fees, be taxed to the Defendant;

5. All issues of fact herein be tried by a jury;

6. Recovery for pre-judgment and post-judgment interest on all amounts awarded herein; and

7. All other relief which this Honorable Court deems just and proper.

This the 6th day of September, 2024.

                              OSBORN GAMBALE BECKLEY & BUDD PLLC

BY: _____
                              JOSEPH D. BUDD
                              N.C. Bar No. 44263
                              1100 Wake Forest Road, Suite 205
                              Raleigh, North Carolina 27604
                              joe@counselcarolina.com
                              919.373.6422
                              Facsimile: 919.578.3733